

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ALBERTO BENITEZ,

Docket No. 07 CV 2919

                           Plaintiff,

                           COMPLAINT

    - against -

LEMLE & WOLFF, INC., 83 POST AVENUE ASSOCIATES,
LLC, FRANK ANELANTE, JR., CHRISTOPHER T. ANELANTE,
GEORGE SCLAVIS, ROSE SANTO, & MARIA AMANZA,

                           Defendants.
------------------------------------------------------------x



## PRELIMINARY STATEMENT

1.    This action seeks redress for serious transgressions of the federal Fair Labor Standards Act (FLSA), New York Labor Law, and New York contract law. In a fundamental breach of their statutory obligations, Defendants Lemle & Wolff, Inc., 83 Post Avenue Associates, LLC, Frank Anelante, Jr., Christopher T. Anelante, George Sclavis, Rose Santo, & Maria Amanza ("Defendants") failed to pay Plaintiff Alberto Benitez ("Plaintiff") overtime compensation, failed to pay Plaintiff an additional hour of "spread of hours" pay at minimum wage for every day in which Plaintiff worked more than ten hours, and failed to maintain adequate and accurate written records for the hours worked and wages earned by plaintiff as required by both the federal Fair Labor Standards Act and the New York Labor Law. In addition, defendants improperly withheld wages for certain projects Mr. Benitez performed on their request which fell outside his regular duties and for which defendants promised additional compensation.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiff's claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, pursuant to 28 U.S.C. § 1331, because these claims arise under a statute of the United States.

3. The court has supplemental jurisdiction over Plaintiffs' claims under New York contract law, and the New York Minimum Wage Act, New York Labor Law § 650 *et seq.*, pursuant to 28 U.S.C. § 1367 because these claims are so closely related to plaintiffs' claims under the Fair Labor Standards Act that they form part of the same case or controversy under Article III of the United States Constitution.

4. Pursuant to § 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), Plaintiff has consented in writing to become a party to this lawsuit. Plaintiff's written consent to be part of this action is attached hereto and is incorporated by reference.

## PARTIES

5. Plaintiff Alberto Benitez resides in New York, New York.

6. Defendant Lemle & Wolff, Inc., is a real estate management firm operating in upper Manhattan and the Bronx. Lemle & Wolff, Inc., is a registered New York State corporation. Its principal executive office is located at 5925 Broadway, Bronx, New York 10463.

7. Defendant 83 Post Avenue Associates, LLC, is the owner and landlord of the building in which plaintiff works and lives, 510 West 188th Street, New York, New York 10040. Upon information and belief, its principal executive office is located at 5925 Broadway, Bronx, New York 10463.

8. Upon information and belief, defendant Frank J. Anelante, Jr., is the Chairman or Chief Executive Officer of Lemle & Wolff, Inc.

9. Upon information and belief, defendant Christopher T. Anelante is the Director of Field Operations of Lemle & Wolff, Inc.

10. Upon information and belief, defendant George Sclavis is an executive of Lemle & Wolff, Inc.

11. Upon information and belief, defendant Rose Santo is a Supervisor at Lemle & Wolff, Inc.

12. Upon information and belief, defendant Maria Amanza is a Building Manager at Lemle & Wolff, Inc.

13. At all relevant times, Maria Amanza directly supervised and controlled Plaintiff's day-to-day work.

14. At all relevant times, Rose Santo supervised the Building Managers, including the work of Maria Amanza. Ms. Santo was involved whenever Mr. Benitez and Ms. Amanza had conflicts. She also gave Mr. Benitez direct orders for additional projects outside his regular duties.

15. At all relevant times, George Sclavis and Christopher T. Anelante supervised the Supervisors and the Building Managers. Both were involved in meetings between Mr. Benitez, Ms. Amanza, and Ms. Santo. Both were involved in meetings with Mr. Benitez and other superintendents in which they told the superintendents that they would receive payment for certain projects outside their regular duties.

16. All Defendants were involved in the hiring, supervision, control, and payment of

Plaintiff.

## VENUE

17. Venue is vested in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## STATEMENT OF FACTS

18. Plaintiff Alberto Benitez began working as the superintendent at 510 West 188th Street in or around 1975. Mr. Benitez is 72 years old. He lives in a basement apartment in the building.

19. Mr. Benitez's regular duties as a superintendent included: mopping the building, taking out the trash, attending to maintenance tasks, cleaning the building and the backyard, cleaning in front of the building, manually maintaining the water level in the boiler, checking the boiler regularly, responding to tenant complaints, and performing small plumbing and electricity jobs.

20. Although Mr. Benitez was told when he was hired that his work was part-time, the manager of the building and the out-going superintendent gave Mr. Benitez an orientation to his work when he began the job and told Mr. Benitez that he should be present at all times in the building to respond to tenant complaints and deal with emergencies. Initially, Mr. Benitez worked as the superintendent at the building and also worked a part-time job in the afternoons. Mr. Benitez's family assisted in fulfilling the on-call requirement by responding to tenant complaints and cleaning when Mr. Benitez was not there. However, in or around 1994, when Mr. Benitez became divorced from his wife, he left his other job so that he could complete all of

the superintendent duties himself.

21. Initially, Mr. Benitez was paid around $70-80 per week. His wages were raised periodically over the years, until in 2006, Mr. Benitez was earning $394.92 per week. Mr. Benitez's paystubs do not list the hours compensated.

22. In or around 1980, Lemle & Wolff began to manage the building.

23. Maria Amanza became the building manager for 510 West 188th Street in or around 2004.

24. Rose Santo became a supervisor for Lemle & Wolff in or around early 2006.

25. Soon after beginning her job as a building manager, Ms. Amanza informed Mr. Benitez that he was required to work full-time and that his work hours were from 8 a.m. to 5 p.m., Monday through Friday.

26. Defendants also expected Mr. Benitez to work outside of his scheduled hours and required Mr. Benitez to be constantly present at the building. Mr. Benitez was routinely required to work many hours over forty each week, without receiving any additional compensation, either at his regular rate or in the form of overtime premiums.

27. Mr. Benitez's regular duties required work in the evenings and on the weekends. For example, the garbage was collected for the building on Mondays. Mr. Benitez spent at least two hours each Sunday cleaning and collecting and preparing all the garbage in the building for the garbage pick-up.

28. In addition, the building does not have an automatic boiler. For that reason, Mr. Benitez was required to monitor the boiler each day. In the winter, Mr. Benitez had to turn a key every day to maintain the water level. In the summer, Mr. Benitez was required to turn the

key less often. Often, the boiler had to be checked or switched in the evenings.

29.     Mr. Benitez was also required to respond to tenant emergencies at any time. Defendants expected Mr. Benitez to be on-call for tenants at all hours of the day or night. Tenants reported complaints to Mr. Benitez in the evenings and on the weekends. Mr. Benitez typically responded to tenant complaints by investigating the problem immediately and scheduling a time to resolve the issue. Mr. Benitez was usually required to fix problems in the apartments in the evenings or on the weekends because the tenants worked during the day and could not be there to open their apartments for him until the evenings or weekends.

30.     In regular monthly meetings with the superintendents the company employed, defendants George Sclavis and Christopher Anelante informed these employees, including Mr. Benitez, that they would be asked to perform larger projects outside their regular duties in the buildings in which they worked, such as hanging sheetrock, and installing faucets, sinks, or drains, and that they would receive additional compensation for this work. The most recent meeting of this kind was in or around August of 2006.

31.     Directed by Ms. Amanza and Ms. Santo, Mr. Benitez regularly performed larger projects which were outside his regular duties, filled out receipts for this work, and submitted the receipts to Ms. Amanza. For example, Mr. Benitez installed kitchen and bathroom sinks and cabinets, replaced twelve marble steps in the lobby of the building, and applied paint and plaster to the walls in the lobby.

32.     Mr. Benitez did not receive any additional compensation for these projects apart from one time, about three years ago, in which he fixed a major leak by laying new pipe in the basement of the building and was paid $500.

33.     Many of these larger projects which were outside his regular duties had to be done in the evenings or on the weekends when the tenants were in their apartments. Approximately three times a month, Mr. Benitez would be required to perform one of these larger projects on a Saturday, which could take up to five hours, depending on the type of project.

34.     Defendants' failure to pay Plaintiff overtime premiums, spread of hours pay, and the promised additional compensation for larger projects outside his regular duties was willful and in bad faith. Defendants had no reasonable grounds for believing that their failure to pay was consistent with the Fair Labor Standards Act, the New York Labor Law, or New York contract law.

35.     Although there were no previous complaints about Mr. Benitez's work, and he continues to be capable of performing the work, once Ms. Amanza became the building manager, she continually called him into her office to make unfounded allegations about his work. She would say, "I have younger supers in other buildings who keep their buildings cleaner."

36.     Ms. Amanza would also frequently say to Mr. Benitez, "You are too old for this job."

37.     Rose Santo once asked Mr. Benitez "Why don't you retire?"

38.     Around September or October of 2006, when Ms. Amanza's harassment of Mr. Benitez increased, and defendants began to talk to him about letting him go, he began to experience insomnia, depression, and back pain radiating from his head to his lower back. He started going to a doctor and is now receiving medical treatment for these symptoms.

39.     On November 10, 2006, defendants fired Mr. Benitez and told him that he was

7

required to vacate his apartment by January 31, 2007.

40. After Mr. Benitez was fired, the tenants in the building circulated a petition to the company to demand that he be restored to the position. They asked to meet with the company management, but they received no response. To replace him, the company hired a new superintendent, who is a younger man in his thirties. He had been working as a superintendent at another of the company's buildings, which the company recently sold. The company also hired a porter to do cleaning, so now there are two people employed to do Mr. Benitez's former job.

41. On January 25, 2007, Mr. Benitez filed a charge of age discrimination to the Equal Employment Opportunity Commission.

42. Defendants have not posted any notices explaining the New York Labor Law or the Fair Labor Standards Act in the building at 510 W. 188th Street, as required by 29 U.S.C. § 211, 29 C.F.R. § 516.4, New York Labor Law § 661, and 12 N.Y.C.R.R. § 142-2.8.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF:
### FAIR LABOR STANDARDS ACT

43. Plaintiff repeats and re-alleges paragraphs 1 through 42 above.

44. Upon information and belief, Defendants were at all relevant times an enterprise engaged in commerce within the meaning of the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 206(b).

45. Section 6(a) of the FLSA, 29 U.S.C. § 206(a), provides that any employee employed in an enterprise engaged in commerce shall be paid wages at a rate not less than $5.15 per hour.

46.     Section 7(a) of the FLSA, 29 U.S.C. § 207(a), provides that no employer engaged in commerce shall employ an employee for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of 40 hours at a rate not less than one and one-half times the regular rate at which he is employed.

47.     Section 16 of the FLSA, 29 U.S.C. § 216(b), provides that any employer who violates the provisions of 29 U.S.C. §§ 206 or 207 shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

48.     The United States Department of Labor calculates unpaid wages and overtime compensation for employees, like plaintiff, who are paid by the week, by dividing the number of hours worked for each week by the amount of pay for that week. If that figure is less than the minimum wage of $5.15, the employee is owed the difference for all hours up to 40 per week. If the employee worked more than 40 hours per week, the employee is also owed one and one-half times the weekly wage (or times the minimum wage, if the weekly wage is less than the minimum wage) for all hours above 40 per week. Additional liquidated damages are due in an amount equal to the total unpaid minimum wages and unpaid overtime compensation.

49.     Defendants' willful failure to pay plaintiff overtime premiums violated the Fair Labor Standards Act.

## SECOND CLAIM FOR RELIEF:
## NEW YORK LABOR LAW: OVERTIME

50.     Plaintiff repeats and re-alleges paragraphs 1 through 49.

51.     Pursuant to regulations issued by the State Commissioner of Labor, an employer shall pay an employee for hours over forty at a wage rate of one and one-half times the

9

employee's regular rate in the manner and methods provided in the FLSA. 12 N.Y.C.R.R. § 142-2.2.

52. Pursuant to New York Labor Law §§ 198.1-a and 663, an employer who willfully fails to pay wages shall be liable, in addition to the amount of any under-payments, for liquidated damages equal to twenty-five percent of the total of such under-payments found to be due him.

53. Defendants' willful failure to pay plaintiff overtime premiums violated the New York Labor Law.

### THIRD CLAIM FOR RELIEF:
### NEW YORK LABOR LAW: SPREAD OF HOURS

54. Plaintiff repeats and re-alleges paragraphs 1 through 53.

55. Defendants willfully failed to pay plaintiff an extra hour's pay at minimum wage for every day that plaintiff worked in excess of ten hours, in violation of New York Labor Law §§ 190, *et seq.*, and 650, *et seq.*, and New York State Department of Labor regulations, 12 N.Y.C.R.R. § 142-2.4.

56. Plaintiff is entitled to an award of an extra hour's pay for every day that he worked in excess of ten hours, as well as liquidated damages, in an amount to be determined at trial, pursuant to New York Labor Law §§ 190, *et seq.*, and 650, *et seq.*, and New York State Department of Labor regulations, 12 N.Y.C.RR. § 142-2.4.

### FOURTH CLAIM FOR RELIEF:
### NEW YORK LABOR LAW: UNPAID WAGES

57. Plaintiff repeats and re-alleges paragraphs 1 through 56.

58. Plaintiff performed work upon Defendants' request outside his regular hours and

duties.

59. For work performed outside plaintiff's regular duties, Defendants promised additional compensation above plaintiff's regular rate of pay.

60. Defendants willfully failed to record, credit, or compensate all hours and duties performed by Plaintiff.

61. By Defendants' failure to pay Plaintiff his wages for all hours worked and all work performed, it has willfully violated the New York Labor Law Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor regulations. Plaintiff is therefore entitled to an award of the unpaid wages and liquidated damages, in an amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF: MAINTENANCE OF EMPLOYMENT RECORDS

62. Plaintiff re-alleges and repeats paragraphs 1 through 61.

63. Upon information and belief, defendants intentionally failed to maintain adequate and accurate written records for the hours worked and wages earned by plaintiff in order to facilitate their exploitation of plaintiff's labor.

64. Defendants' knowing and intentional acts constitute a violation of 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2.

65. Defendants' knowing and intentional acts constitute a violation of New York Labor Law § 195(4) and 12 N.Y.C.R.R. § 142-2.6.

66. As a result of the foregoing, plaintiff has been injured, and defendants have profited thereby, in an amount to be proven at trial.

## SIXTH CLAIM OF RELIEF:
## BREACH OF CONTRACT

67. Plaintiff repeats and re-alleges paragraphs 1 through 66.

68. Defendants promised to pay Plaintiff for additional projects above and beyond his regular duties.

69. The value of Plaintiff's labor on each of the additional projects defendants' required him to perform and defendants' promised to pay remains due and owing to Plaintiff pursuant to an oral contract between the parties.

70. Defendants have failed and refused to pay to Plaintiff the amount owed to him for these projects.

71. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined by the Court, plus interest thereon, for which Defendants are liable.

## SEVENTH CLAIM FOR RELIEF;
## QUANTUM MERUIT

72. Plaintiff repeats and re-alleges paragraphs 1 through 71 above.

73. In the alternative, even if Defendants did not actually contract to pay Plaintiff for his labor, Plaintiff conferred the benefit of his labor to Defendants in good faith and with the expectation of payment, the Defendants accepted the benefit of his work, and Defendants deliberately failed to pay him the reasonable value of his work.

74. Defendants were unjustly enriched by their deliberate and intentional exploitation of Plaintiff's labor.

75. As a result of the foregoing, Plaintiff has been injured, and Defendants have profited thereby.

**WHEREFORE**, plaintiff demands judgment:

1. Awarding unpaid wages, overtime pay, and spread-of-hours pay, plus liquidated damages, pursuant to 29 U.S.C. §§ 207, 216(b); New York Labor Law §§ 190, *et seq*, 198, 652(1), 650, 663; and 12 N.Y.C.RR. § 142-2.4;

2. Awarding pre-judgment interest;

3. Awarding reasonable attorney's fees, costs, and expenses pursuant to 29 U.S.C. § 216(b); and New York Labor Law §§ 198, 663;

4. Declaring that defendants' failure to maintain adequate records was a violation of 29 U.S.C. §§ 211(c), 215(a)(5); 29 C.F.R. § 516.2; New York Labor Law § 195(4); and 12 N.Y.C.R.R. § 142-2.6.

5. Awarding damages in an amount to be proven at trial for defendants' failure to maintain adequate records;

6. Ordering defendants to pay Plaintiff damages in an amount to be determined pursuant to the oral contract between the parties, plus interest thereon;

7. Ordering defendants to pay Plaintiff damages in an amount to be determined based on the reasonable value of the work they required him to do and the benefit they accepted, plus interest thereon;

8. Awarding such other and further relief that the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
April 10, 2007

By: /s/ *signature*
STEVEN BANKS (SB 0987)
Attorney-in-Chief
ADRIENE L. HOLDER (AH 1872)
Attorney-in-Charge, Civil Practice
CHRISTOPHER D. LAMB (CL 8145)
Attorney-in-Charge, Staten Island Neighborhood Office
THE LEGAL AID SOCIETY
Employment Law Project
Hollis V. Pfitsch, Esq., of counsel (HP 0522)
199 Water Street, 3rd Floor
New York, New York 10038
(212) 577-3465

14

## SECTION 216(b) FAIR LABOR STANDARDS ACT AUTHORIZATION

I, Alberto Benitez, hereby consent to be a plaintiff in a lawsuit pursuant to Section 216(b) of the Federal Fair Labor Standards Act.

Dated: New York, New York
April 4, 2007

_____
Alberto Benitez

Sworn to before me this 4th day of
April, 2007

_____
NOTARY PUBLIC

RICHARD E. BLUM
NOTARY PUBLIC, State of New York
No. 24-4975295
Qualified in Kings County
Commission Expires December 3, 2010

## AFFIDAVIT OF TRANSLATION

I, Hollis V. Pfitsch, certify that I am fluent in both Spanish and English and that I have correctly and accurately translated the complaint and this document from English to Spanish, and that the plaintiff, Alberto Benitez, has assured me that he understands these documents.

Dated: New York, New York
April 4, 2007

_____
Hollis V. Pfitsch

Sworn to before me this 4th day of
April, 2007

_____
NOTARY PUBLIC

RICHARD E. BLUM
NOTARY PUBLIC, State of New York
No. 24-4975295
Qualified in Kings County
Commission Expires December 3, 2010